UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
COMPLETE PACKAGING & SHIPPING
SUPPLIES, INC., et al.

                     Third-Party Plaintiffs,                 **MEMORANDUM AND ORDER**
                                            22-CV-02821 (OEM)

                     v.

ARCH INSURANCE COMPANY,

                    Third-Party Defendant.
------------------------------------------------------------x

**ORELIA E. MERCHANT, United States District Judge:**

        Plaintiff Yonah Rothman ("Rothman") commenced the underlying action (the "Rothman Action") on May 13, 2022, against defendants Complete Packaging & Shipping Supplies, Inc. ("Complete") and Mitchell Mankosa ("Mankosa") (together with Complete Packaging, "Defendants"). Rothman alleges that he was underpaid and retaliated against by Defendants, in part because Rothman complained of sex discrimination perpetrated by Defendants against Joan Wunk ("Wunk"), a colleague of Rothman's. *See generally* Complaint ("Compl."), ECF 1.

        Third-party plaintiff Complete filed a third-party complaint (the "Third-Party Complaint") on May 11, 2023, against Arch Insurance Group, Inc. Specifically, Complete is seeking to require defense and indemnification in connection with the Rothman Action. Complete alleges that Arch Insurance Group, Inc., disclaimed coverage relating to the Rothman Action "on the basis that [sic] their erroneous determination that the claim upon which coverage is sought allegedly arose outside of the policy period of December 5, 2021 to December 5, 2022" (the "Policy Period"). Third Party Complaint at 3. Complete alleges this determination was incorrect and that its claim arose within the Policy Period. *Id*. On August 21, 2023, Arch Insurance Company was substituted for third-party defendant Arch Insurance Group, Inc., and the caption was changed accordingly.

Before the Court is Arch Insurance Company ("AIC")'s motion to dismiss the Third-Party Complaint for failure to state a claim upon which relief can be granted. For the following reasons, AIC's motion is granted and the Third-Party Complaint is dismissed.

## BACKGROUND

Rothman began working for Complete in or around 2005 as a salesman, but "worked his way up to become one of two (2) Directors of Government Sales." Compl. at 3. The other Director of Government Sales, Wunk, "performed substantially the same work" as Rothman but "earned a lower commission percentage" from her sales. *Id*. at 4. Rothman alleges that Mankosa, who was "part of a group that purchased Complete," repeatedly mistreated and complained to Plaintiff about Wunk. *Id*. at 5. Rothman alleges that he "complained about" what he perceived as "discriminatory behavior towards Ms. Wunk," who is a gay woman, and "told Mankosa that the way he treated her was wrong." *Id*.

Rothman alleges that his support of Wunk came to a head in 2020, when he "exercised his opposition to discriminatory behavior by cooperating in the Title VII case brought by Ms. Wunk," (the "Wunk Action"), which included "providing recordings of conversations between [Rothman] and Defendant Mankosa." *Id*. at 6. Rothman alleges that his "participation in the opposition to discriminatory behavior" became known to Defendants "[t]hrough the discovery process in Ms. Wunk's case," and that thereafter he began facing several decreases in his compensation package from Complete. *Id*. at 7. Plaintiff also alleges that he was "repeatedly underpaid his commissions" on earlier occasions. *Id*. at 5.

Plaintiff alleges that two weeks after Wunk's lawsuit against Complete was settled, he "was terminated from employment with Complete by Defendant Mankosa." *Id*. at 8. Plaintiff alleges that this termination was motivated both by his complaints regarding the discriminatory

treatment suffered by Wunk and by his complaints regarding commission underpayments.  *Id*. at

8-11.

On May 13, 2022, Rothman initiated the Rothman Action against Complete, alleging

violations of Title VII, the New York Labor Law, and the New York State Human Rights Law.

*Id*. at 8-13.  Thereafter, Complete demanded that Arch Insurance defend and indemnify

Complete from the Rothman Action pursuant to "a written contract with Arch Insurance to

provide liability insurance to Complete Packaging […] for the period covering December 5,

2021 to December 5, 2022" (the "Insurance Policy").  Third Party Complaint at 2.  The

Insurance Policy provided that "Arch Insurance would have the duty to defend and indemnify

any suit seeking damages on account of allegations by employees for discrimination and

wrongful termination of employment brought against Complete Packaging."  *Id*.

The Third-Party Complaint contends that the Rothman Action falls within the ambit of

this agreement and within the Policy Period because "Rothman was terminated from

employment on March 16, 2022, and the [Rothman Action] was commenced on May 13, 2022,

both events occurring within the Policy Period."  *Id*. at 3.

**STANDARD**

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal on the basis of "failure to

state a claim upon which relief can be granted."  Fed. R. Civ. Pro. 12(b)(6).  "To survive a motion

to dismiss, Plaintiff's complaint must meet the *Iqbal-Twombly* pleading standard and "must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007)).  In reviewing a motion to dismiss, this Court must "accept[] as true factual

allegations made in the complaint, […] drawing all reasonable inferences in favor of the plaintiffs."

*Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012).

## DISCUSSION

In its memorandum of law in support of its motion to dismiss, AIC argues that the Third-Party Complaint fails to state a claim upon which relief can be granted because: (1) the Rothman Action and the Wunk Action should be deemed a single claim first made before the Policy Period; and (2) the Insurance Policy independently bars coverage due to a clause disclaiming coverage for lawsuits arising out of Wunk's acts. *See* AIC's Memorandum of Law, ECF 74-1 ("AIC's Memo").

### A. A Single Claim

In order to determine whether the Rothman Action falls within the Policy Period, this Court must determine the interpretation of the Insurance Policy. "The interpretation of an unambiguous contract is a matter for the court." *Zahler v. Twin City Fire Ins. Co.*, No. 04 CIV. 10299 (LAP), 2006 WL 846352, at *4 (S.D.N.Y. Mar. 31, 2006). "The fundamental principle of contract interpretation under New York law is that contracts are construed according to the intent of the parties," the "best evidence of" which "is what the parties have written in their agreement." *Id*. at *4. "A written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *Greenfield v. Philles Records*, 98 N.Y.2d 562, 569 (2002).

An insurance contact "is governed by the rules of construction applicable to contracts generally." *Christiania Gen. Ins. Corp. of New York v. Great Am. Ins. Co.*, 979 F.2d 268, 274 (2d Cir. 1992). "Insurance policies are, in essence, creatures of contract, and, accordingly, subject to principles of contract interpretation." *In the Matter of the Estates of Covert and*

*Another,* 97 N.Y.2d 68, 76 (2001). "An insurance policy is interpreted 'in light of 'common speech' and the reasonable expectations of a businessperson.'" *Zahler*, 2006 WL 846352, at *4.

In determining the interpretation of an insurance agreement, the "insured […] bears the burden of proving that the policy affirmatively provides for coverage of the claim, 'while the insurer bears the burden of proving that an exclusion in the policy applies to defeat coverage.'" *Berkley Assurance Co. v. Hunt Constr. Grp., Inc.*, 465 F. Supp. 3d 370, 376 (S.D.N.Y. 2020). Where a court finds that the language of a contract is ambiguous, it must resolve any ambiguity "in favor of the insured and against the insurer." *Shants, Inc. v. Cap. One, N.A.*, 124 A.D.3d 755, 759 (2d Dep't 2015).

AIC contends that the language of the Insurance Policy unambiguously places the Rothman Action outside the ambit of coverage. By the Insurance Policy's plain language, "the liability coverage parts of this policy apply only to claims first made against the insureds during the policy period," rendering it a "claims made" policy. *See* Third-Party Complaint, Exhibit C at 1.

The Insurance Policy does not provide blanket coverage over such suits without limitation, however. The Insurance Policy contains an "Interrelated Claims" provision, which stated that "all Claims arising from, based upon, or attributable to the same Wrongful Act or Interrelated Wrongful Acts shall be deemed to be a single Claim first made on the earliest date that […] any of such Claims was first made, even if such date is before the Policy Period." *Id*. at 13. "Interrelated Wrongful Acts" was defined by the Insurance Policy as "Wrongful Acts that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally connected facts, circumstances, situations, events, transactions or causes." *Id*. at 9.

5

AIC contends that this Court should treat this language as unambiguous, find that the Rothman Action and the Wunk Action arose from the same Interrelated Wrongful Acts, and therefore find that the Rothman Action comprises a single claim with the Wunk Action.  AIC's Memo at 8-10.  Because the Wunk Action was initiated in 2020, *see* Compl. at 6, AIC contends that the Rothman Action falls outside of the Policy Period of December 5, 2021 to December 5, 2022.  *Id*. at 10.

The Court finds that the Insurance Policy's language concerning interrelated claims is unambiguous.  Similar policy language has been deemed unambiguous and not subject to more than one reasonable interpretation in a number of recent cases within this Circuit.  *See*, *e.g.*, *Nomura Holding Am., Inc. v. Federal Ins. Co.*, 629 F. App'x 38 (2d Cir. 2015) (summary order) (finding as unambiguous and binding policy language that defined "'Related Claims' to mean 'all Claims for Wrongful Acts based upon, arising from, or in consequence of the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events.'"); *Lonstein L. Off., P.C. v. Evanston Ins. Co.*, No. 20-CV-9712 (LJL), 2022 WL 311391, at *9 (S.D.N.Y. Feb. 2, 2022) (Regarding similar contract language, "*Nomura Holding* is dispositive here with respect to whether the contract language is unambiguous."); *Quality Health Plans of New York Inc. v. Ironshore Specialty Ins. Co.*, No. CV 20-3563 (JS)(AYS), 2023 WL 2970089, at *7 (E.D.N.Y. Feb. 27, 2023) (same).

Having found the language of the Insurance Policy unambiguous, the Court must next evaluate whether the Rothman Action and the Wunk Action arise from Interrelated Wrongful Acts such that they would form a single claim.  "The New York Court of Appeals has held that the phrase 'arising out of' is 'ordinarily understood to mean originating from, incident to, or having connection with.'" *Fed. Ins. Co. v. Am. Home Assur. Co.*, 639 F.3d 557, 568 (2d Cir.

6

2011).  As discussed above, the Insurance Policy defines Interrelated Wrongful Acts as "Wrongful Acts that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally connected facts, circumstances, situations, events, transactions or causes."  *See* Third Party Complaint, Exhibit C at 9.

Here, the Wunk Action and the Rothman Action arise out of Interrelated Wrongful Acts, namely the alleged discriminatory actions taken by Defendants against Wunk.  In his complaint, Rothman alleges that he was terminated because he repeatedly voiced his opposition to Defendants' discriminatory actions against Wunk—the very same discriminatory actions that were challenged by Wunk in the Wunk Action.  Given the broad interpretation of the phrase "arising out of" in New York courts, and the similarly broad definition of Interrelated Wrongful Acts in the Insurance Policy, this common factual nexus means that the Wunk Action and the Rothman Action are "arising from, based upon, or attributable to the same Wrongful Act or Interrelated Wrongful Acts" and therefore "shall be deemed to be a single Claim first made on the earliest date that […] any of such Claims was first made."  *Id*. at 13.

Complete itself acknowledges the clear factual nexus between the Rothman Action and the Wunk Action.  In its memorandum of law in support of its motion to disqualify Rothman's counsel, Complete contended that "The Wunk Matter is heavily referenced in the Plaintiff's Complaint and Amended Complaint and serves as a basis for Plaintiff's retaliation claim; therefore, the allegations and facts within that action are integral to this action."  *See* Complete's Motion to Disqualify Memorandum of Law ("Complete's Disqualification Memo"), ECF 19-9 at 3.  In its reply memorandum of law, Complete further contended that the Rothman Action "is in essence a re-litigation of [the Wunk Action] as this matter is derivative of the Wunk Matter," *see* Complete's Disqualification Reply, ECF 25 at 7, that "this action is related to the Wunk Matter,"

*id*., and that "Ms. Wunk's discrimination allegations […] are now the very subject of Plaintiff's Amended Complaint," *id*. at 9.

Because the Court finds that the Wunk Action and the Rothman Action are "arising from, based upon, or attributable to the same Wrongful Act or Interrelated Wrongful Acts" and therefore "shall be deemed to be a single Claim first made on the earliest date that […] any of such Claims was first made," and because the Wunk Action was first made in 2020 outside of the Policy Period, the Court finds that the Rothman Action falls outside the ambit of the Insurance Policy. *Id*. at 13.

## CONCLUSION

For the reasons set forth above, AIC's motion is granted and the Third-Party Complaint is dismissed in entirety.

The Clerk is respectfully directed to enter a judgment in accordance with this order.

**SO ORDERED.**

                       /s/ Orelia E. Merchant
                       **ORELIA E. MERCHANT**
                       **United States District Judge**

Dated: Brooklyn, New York
       April 18, 2024.