**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
YONAH ROTHMAN,

                        Plaintiff,               **<u>MEMORANDUM AND ORDER</u>**

   -against-                         **22-CV-2821 (OEM) (ST)**

COMPLETE PACKING & SHIPPING
SUPPLIES, INC., AND MITCHELL
MANKOSA, individually and as an
aider and abettor,

                        Defendants.
-----------------------------------------------------------X

**TISCIONE, United States Magistrate Judge:**

Before this Court is a motion for attorneys' fees brought by Yonah Rothman ("Plaintiff") against Complete Packaging & Shipping Supplies, Inc., and Mitchell Mankosa (collectively, "Defendants"). Plaintiff, a former employee, brought suit against Defendants alleging federal and state labor law violations along with civil rights violations. Thereafter, Defendants filed a motion to disqualify Plaintiff's counsel for alleged ethical violations and conflicts of interest. The Court denied the motion. Plaintiff now brings this motion to recover attorneys' fees and costs incurred in opposing the motion to disqualify. The motion was referred to this Court for decision by the Honorable Orelia E. Merchant. For the reasons discussed herein, Plaintiff's motion is DENIED.

## BACKGROUND

The facts relevant to the instant motion, and the motion to disqualify from which the instant motion arises, involve a previous action aside from Plaintiff's current suit. In 2020, Joan Wunk ("Ms. Wunk") filed a discrimination suit against Defendants, her former employer(s), with the assistance of her counsel, Diana McManus ("Ms. McManus") and Saul Zabell ("Mr. Zabell") of Zabell & Collotta, P.C (together, "Plaintiff's counsel"). Mem. & Order ("M&O"), at 1, ECF No.

36[1]; *see also Wunk v. Complete Packaging & Shipping Supplies, Inc.*, 2:20-cv-01269. That matter settled and was dismissed without the need for a trial. M&O, at 1.

On May 13, 2022, Plaintiff filed the instant suit against Defendants, his former employer(s), alleging, in pertinent part, that Defendants retaliated against Plaintiff because he provided assistance to Ms. Wunk in her suit, while he was still employed with the company. *See* Compl. ¶¶ 33, 35, 41–44, 47–52, 70–74, ECF No. 1; Am. Compl. ¶¶ 33, 35, 41–44, 47–52, 70–74, ECF No. 12.[2] Specifically, Plaintiff alleged that, to assist with Ms. Wunk's suit, he provided recordings of conversations Plaintiff had with Defendant Mankosa, which Defendant Mankosa became aware of during discovery in Ms. Wunk's case. Am. Compl. ¶¶ 33–34. Plaintiff alleged that Defendants terminated his employment approximately two weeks after a settlement was reached in Ms. Wunk's case, in retaliation for the assistance he had provided. Am. Compl. ¶¶ 43–44, 49, 71. Plaintiff also retained Ms. McManus and Mr. Zabell of Zabell & Collotta, P.C. *See generally* Compl.

Soon after Plaintiff commenced this suit, Defendants filed a motion to disqualify Plaintiff's counsel. In doing so, Defendants argued that Ms. McManus and Mr. Zabell should be disqualified under the witness-advocate rule because Defendants intended to call them as witnesses to testify as to the nature of Plaintiff's assistance in Ms. Wunk's case. Mem. Law Supp. Defs.' Mot. Disqualify ("Mot. Disqualify") 5–9, ECF No. 19-9. Alternatively, Defendants argued that

---

[1] The Court's decision on the underlying motion to disqualify can be found at *Rothman v. Complete Packaging & Shipping Supplies, Inc.*, No. 22-CV-2821, 2023 WL 2740862 (E.D.N.Y. Mar. 31, 2023). However, citations herein will reference the page numbers from the ECF filing.

[2] Plaintiff has since filed a Second Amended Complaint. *See* ECF No. 60. However, as the First Amended Complaint was the operative pleading at the time Defendants' filed the motion to disqualify, upon which the instant motion is based, the Court cites to the First Amended Complaint throughout this discussion.

Plaintiff's counsel should be disqualified because they had a conflict of interest arising from their representation of Ms. Wunk.[3] *Id.* at 9–11.

In opposition, Plaintiff argued that Mr. Zabell and Ms. McManus were not necessary fact witnesses because other available witnesses, including Plaintiff and Ms. Wunk, possessed the same, or more, knowledge of the relevant facts regarding the extent of Plaintiff's assistance. Pl.'s Mem. Law Opp'n Defs.' Mot. Disqualify ("Pl.'s Opp'n") 3–7, ECF No. 20. Plaintiff further argued that Defendants had presented no evidence that counsels' testimony would prejudice or contradict Plaintiff's. *Id.* at 7–8. Plaintiff then argued that Defendants had failed to show that Plaintiff's and Ms. Wunk's interests were adverse, and thus had failed to show a conflict of interest. *Id.* at 8–9. Finally, Plaintiff argued that Defendants' motion should be denied in its entirety and "request[ed] the issuance of an award of attorneys' fees and costs incurred in the opposition of Defendants' frivolous application." *Id.* at 2; *see also id.* at 11 (requesting award of attorneys' fees and arguing that, "given the totality of the circumstances and the absence of any legitimate argument, an award of costs and fees is particularly appropriate").

The Honorable Joanna Seybert referred Defendants' motion to this Court for decision.[4] *See* Docket Entry dated Oct. 31, 2022. Thereafter, the Court issued a Memorandum and Order denying the motion. *See generally* M&O. Specifically, the Court found that Defendants had failed to show that counsels' testimony would be either necessary or prejudicial to Plaintiff, as required under the witness-advocate rule, and had failed to show that a conflict of interest existed, whether concurrent or subsequent. *Id.* at 3–8. Finally, the Court addressed Plaintiff's request for attorneys' fees and

---

[3] The relevant section of Defendants' memorandum only discussed and analyzed the rules applicable for concurrent conflicts of interest. Mot. Disqualify, at 9–11. A subsequent section argued that Plaintiff's counsels' firm should be vicariously disqualified due to counsels' "successive and concurrent conflicts of interest," although no argument for successive conflicts had been made. *Id.* at 11–12. In the interest of thoroughness, the Court's Memorandum and Order addressed both. *See* M&O, at 6–8.

[4] On July 11, 2023, the case was reassigned to the Honorable Orelia E. Merchant. *See* Docket Entry dated July 11, 2023.

costs, but did not reach a holding regarding the request. Instead, in Part IV, entitled "Plaintiff May

Make a Formal Motion for Attorney's Fees and Costs," the Court found as follows:

> Plaintiff requests reasonable attorney's fees and costs incurred in opposing
> this motion to disqualify. However, Plaintiff has not requested a specific amount to
> be awarded, nor has Plaintiff presented evidence demonstrating that such amounts
> would be reasonable. *Eastern Savings Bank, FSB v. Robinson*, No. 13-CV-7308
> (ADS) (SIL), 2016 WL 3365091, at *8 (E.D.N.Y. May 9, 2016) *report and
> recommendation adopted by*, No. 13-CV-7308 (ADS) (SIL), 2016 WL 3102021
> (E.D.N.Y. June 2, 2016) (even where attorney's fees are recoverable, the moving
> party retains the burden of demonstrating reasonableness). However, Plaintiff is
> granted leave to make a formal motion for attorney's fees with proper supporting
> documentation.

*Id.* at 8. In conclusion, the Court reiterated that Plaintiff was "granted leave to file a formal motion

for attorney's fees and costs." *Id.* at 9.

Plaintiff now brings the instant motion seeking attorneys' fees and costs incurred in

opposing Defendants' motion to disqualify pursuant to 28 U.S.C. § 1927 and the Court's inherent

power. *See* Pl.'s Mem. Law Supp. Mot. Att'ys Fees ("Pl.'s Mem."), ECF No. 71; Pl.'s Reply Mem.

Supp. Mot. Att'ys Fees ("Pl.'s Reply"), ECF No. 73. The Honorable Orelia E. Merchant referred

the motion to this Court for decision. *See* Referral Order dated Dec. 14, 2023.

## LEGAL STANDARD

Title 28, Section 1927, of the United States Code provides that an attorney "who so

multiplies the proceedings in any case unreasonably and vexatiously may be required by the court

to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because

of such conduct." 28 U.S.C. § 1927. In addition, courts have the "inherent power to sanction a

party or an attorney who has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'"

*Ransmeier v. Mariani*, 718 F.3d 64, 68 (2d Cir. 2013) (quoting *Chambers v. NASCO, Inc.*, 501

U.S. 32, 43–44 (1991)); *see also Robinson v. De Niro*, 614 F. Supp. 3d 73, 76 (S.D.N.Y. 2022),

*report and recommendation adopted*, No. 19-CV-09156, 2022 WL 7091518 (S.D.N.Y. Oct. 12,

2022). "[T]he only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is . . . that awards under § 1927 are made only against attorneys . . . while an award made under the court's inherent power may be made against an attorney, a party, or both." *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986); *see also Robinson*, 614 F. Supp. 3d at 76 n.3. "As a consequence, requests for sanctions under Section 1927 and pursuant to the court's inherent authority may be decided in a single inquiry." *Cole v. Stephen Einstein & Assocs., P.C.*, 365 F. Supp. 3d 319, 337 (W.D.N.Y. 2019) (quoting *In re Khan*, 488 B.R. 515, 531 (Bankr. E.D.N.Y. 2013), *aff'd sub nom. Dahiya v. Kramer*, No. 13-CV-3079, 2014 WL 1278131 (E.D.N.Y. Mar. 27, 2014), *aff'd sub nom. In re Khan*, 593 F. App'x 83 (2d Cir. 2015)).

"To impose sanctions under either § 1927 or this Court's inherent powers, there must be clear evidence that '(1) the offending party's claims were entirely without color, <u>and</u> (2) the claims were brought in bad faith—that is, motivated by improper purposes such as harassment or delay.'" *United States v. Prevezon Holdings, Ltd.*, 305 F. Supp. 3d 468, 478–79 (S.D.N.Y. 2018) (quoting *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000) (per curiam)) (emphasis in original); *see also Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42, 55 (2d Cir. 2018). "[This] test is conjunctive and neither meritlessness alone nor improper purpose alone will suffice." *Martin v. Giordano*, 185 F. Supp. 3d 339, 354 (E.D.N.Y. 2016) (quoting *Sierra Club v. U.S. Army Corps of Eng'rs*, 776 F.2d 383, 390 (2d Cir. 1985)). Moreover, a court's factual findings under both prongs "must be supported by a high degree of specificity." *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009) (first citing *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 337 (2d Cir.1999); and then citing *Eisemann*, 204 F.3d at 396); *see also Prevezon Holdings*,

305 F. Supp. 3d at 478 ("The court must engage in a highly fact-specific inquiry in deciding whether to award sanctions.").

"[A] claim is entirely without color when it lacks *any* legal or factual basis." *Schlaifer Nance*, 194 F.3d at 337 (emphasis in original); *see also Prevezon Holdings*, 305 F. Supp. 3d at 479. "Conversely, a claim is colorable when it has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim." *Schlaifer Nance*, 194 F.3d at 337 (quotations and citation omitted); *accord Wolters Kluwer*, 564 F.3d at 114. "The question is whether a reasonable attorney . . . could have concluded that facts supporting the claim *might be established*, not whether such facts actually *had been established*." *Schlaifer Nance*, 194 F.3d at 337 (emphasis in original) (quotations and citation omitted); *see also Prevezon Holdings*, 305 F. Supp. 3d at 479.

"To find bad faith, the court must conclude that the action was 'asserted wantonly, for purposes of harassment or delay, or for other improper reasons.'" *Robinson*, 614 F. Supp. 3d at 76 (quoting *Browning Debenture Holders' Comm. v. DASA Corp.*, 560 F.2d 1078, 1088 (2d Cir. 1977)). Bad faith is a subjective inquiry. *Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 96 (2d Cir. 1997) (citing *United States v. Intern. Bhd. of Teamsters*, 948 F.2d 1338, 1345–46 (2d Cir. 1991)). Indeed, "'[p]oor legal judgment' is not the same as bad faith." *Robinson*, 614 F. Supp. 3d at 76 (quoting *Schlaifer Nance*, 194 F.3d at 340).

In addition to the substantive requirements for the imposition of sanctions, there are also procedural prerequisites. *Gollomp v. Spitzer*, 568 F.3d 355, 368 (2d Cir. 2009). Specifically, due process requires that the party to be sanctioned "must receive specific notice of the conduct alleged to be sanctionable and the standard by which that conduct will be assessed, and an opportunity to be heard on that matter, and must be forewarned of the authority under which sanctions are being

considered, and given a chance to defend himself against specific charges." *In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109, 117 (2d Cir. 2000) (quoting *Sakon v. Andreo*, 119 F.3d 109, 114 (2d Cir. 1997)); *see also Chang v. CK Tours, Inc.*, 605 F. Supp. 3d 529, 545 (S.D.N.Y. 2022). "At a minimum, the notice requirement mandates that the subject of a sanctions motion be informed of: (1) the source of authority for the sanctions being considered; and (2) the specific conduct or omission for which the sanctions are being considered so that the subject of the sanctions motion can prepare a defense." *In re 60 E. 80th*, 218 F.3d at 117 (citations omitted). This requires notice of the specific provision under which sanctions are sought. *L.B. Foster Co. v. Am. Piles, Inc.*, 138 F.3d 81, 89 (2d Cir. 1998). For example, "if sanctions are to be imposed pursuant to § 1927, a notice that sanctions are sought under Rule 11 is insufficient." *Id.* (citing *Ted Lapidus*, 112 F.3d at 96–97).

Courts deciding whether to impose sanctions exercise "great caution, so as not to stifle the enthusiasm or chill the creativity that is the very lifeblood of the law." *Cole*, 365 F. Supp. 3d at 336 (quoting *Mone v. C.I.R.*, 774 F.2d 570, 574 (2d Cir. 1985)) (citation omitted); *see also Wilson v. Citigroup, N.A.*, 702 F.3d 720, 723 (2d Cir. 2012). Ultimately, "[t]he decision to issue sanctions under either ground lies within th[e] Court's broad discretion." *Prevezon Holdings*, 305 F. Supp. 3d at 478 (citing *Sorenson v. Wolfson*, 170 F.Supp.3d 622, 634 (S.D.N.Y. 2016)); *accord Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 235 (2d Cir. 2020). "Because the court's inherent power to impose sanctions is discretionary, the court is not required to sanction a party or attorney even if it has determined that some wrongdoing has occurred." *Yukos*, 977 F.3d at 235 (quoting *Murray v. City of Columbus*, 534 F. App'x 479, 485 (6th Cir. 2013)). Indeed, inherent powers sanctions are only upheld "when serious misconduct clearly appears on the record." *Sakon*, 119 F.3d at 114–15 (quoting *Milltex Industries Corp. v. Jacquard Lace Co.*, 55 F.3d 34, 41 (2d Cir. 1995)).

**DISCUSSION**

Having been granted leave to file a formal motion for attorneys' fees and costs, Plaintiff now brings the instant motion. Notably absent from Plaintiff's motion, however, is any substantive argument regarding why, as a matter of law, Plaintiff is entitled to fees, apart from a few perfunctory assertions devoid of citations. *See* Pl.'s Mem. Indeed, Defendants, in opposition, argue that Plaintiff motion cites only to cases in which a party prevailed in an action, rather than on a motion, and was thus entitled to fees under an applicable fee-shifting statute, which is not the posture of this case. Defs.' Opp'n, at 1. Consequently, Defendants argue, Plaintiff's motion should be denied because "Plaintiff has failed to demonstrate that it is entitled to . . . fees under any statute, case, or legal theory." *Id.* On reply, Plaintiff avers that Defendant's argument in this regard is "without legal support" because there is "ample legal precedent . . . that a party is entitled to attorneys' fees as a successful movant." Pl.'s Reply, at 1. Plaintiff then proceeds to set forth the rule statements regarding inherent power sanctions, and analyzes the instant fee request thereunder.[5] *Id.* at 1–2. Plaintiff's opening memorandum, however, never mentioned the word "sanction." *See* Pl.'s Mem.

As arguments raised for the first time on reply are generally waived, except in limited circumstances, *Alvarez v. Experian Info. Sols., Inc.*, 661 F. Supp. 3d 18, 23 (E.D.N.Y. 2023), *aff'd*, No. 19-CV-3343, 2024 WL 3643269 (E.D.N.Y. Aug. 2, 2024), this motion presents a question regarding whether Plaintiff properly raised the issue of sanctions—either in opposition to the

---

[5] While not explicitly argued, Plaintiff also mentions § 1927 sanctions via citations and parentheticals. Pl.'s Reply, at 1–2. It is not entirely clear whether Plaintiff seeks sanctions under either basis, or just inherent powers. Indeed, while the *legal* standards for § 1927 and inherent powers sanctions are the same, *Oliveri*, 803 F.2d at 1273, courts have recognized that a given basis may be more *factually* applicable to specific circumstances presented. *See Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 465 (S.D.N.Y. 2023) (sanctioning citations to fake cases generated by ChatGPT under Rule 11 and inherent powers, but not § 1927, because "Respondents' reliance on fake cases has caused several harms but dilatory tactics and delay were not among them"). Given the frequency with which Plaintiff has argued that Defendants' motion was a delay tactic, it is unclear why Plaintiff primarily discusses inherent powers sanctions. *See* Pl.'s Opp'n, at 1, 3, 11; Pl.'s Reply, at 2–3.

8

underlying motion to disqualify, or in the opening memorandum on the instant motion—or if this argument was raised for the first time on reply. If the argument was raised for the first time on reply, the Court must address whether this is permissible. Thereafter, the Court will address the merits of Plaintiff's argument for sanctions.

For the reasons that follow, Plaintiff's motion for attorneys' fees is DENIED.

## I.     Plaintiff Waived the Sanctions Argument Because It Was Raised for the First Time on Reply.

As an initial matter, a prevailing party to an action, or on a motion, is not automatically entitled to attorneys' fees. *See Hensley v. Eckerhart*, 461 U.S. 424, 429, 437 (1983); *Sussman v. Bank of Israel*, 56 F.3d 450, 460 (2d Cir. 1995). Rather, under the American Rule, each party bears its own fees except in limited circumstances, such as when there is an applicable fee-shifting statute, or when sanctions are imposed. *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (2015); *Castillo Grand, LLC v. Sheraton Operating Corp.*, 719 F.3d 120, 123–24 (2d Cir. 2013); *see also Acceptance Indem. Ins. Co. v. Joseph Krar & Assocs., Inc.*, No. 3:21-CV-699, 2023 WL 4838217, at *11 n.8 (D. Conn. July 28, 2023) ("[U]nless some statute, rule, or other legal authority exists to permit a party to recover attorneys' fees, a prevailing party is not entitled to fees."). Thus, as a *threshold* matter, a "fee applicant bears the burden of establishing entitlement to an award," and *thereafter* bears the burden of "documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437; *cf. Benjamin v. Oxford Health Ins., Inc.*, 355 F. Supp. 3d 131, 138 (D. Conn. 2019).

In light of the American Rule, it is apodictic that a party filing a motion for attorneys' fees must address and establish entitlement thereto, before proceeding to the reasonableness of the rates

requested and hours expended.[6] *See, e.g.*, *D.M. v. New York City Dep't of Educ.*, No. 19-CV-1477, 2021 WL 4441508, at *4 (S.D.N.Y. Sept. 28, 2021) (assessing argument that movant was entitled to fees). Courts faced with such motions often engage in thorough, lengthy analyses regarding parties' entitlement to fees before addressing the reasonableness of requested hours and rates. *See, e.g.*, *Callari v. Blackman Plumbing Supply, Inc.*, No. 11-CV-3655, 2020 WL 2771008, at *6–8 (E.D.N.Y. May 4, 2020), *report and recommendation adopted*, No. 11-CV-3655, 2020 WL 2769266 (E.D.N.Y. May 28, 2020) (conducting 10-paragraph, detailed analysis of statutory entitlement to fees before analyzing reasonableness of amounts requested). Indeed, courts ruling that parties do not need to address entitlement have done so when a fee award was statutorily mandated. *See, e.g.*, *Wager v. G4S Secure Integration, LLC*, No. 19CV03547, 2021 WL 293076, at *4–5 (S.D.N.Y. Jan. 28, 2021) ("Because an award of expenses under Rule 37(a)(5)(A) is mandatory, a movant is not required to present substantive arguments in her opening brief to show why she is entitled to recover expenses incurred in connection with her motion to compel. . . . A successful movant does not waive her entitlement to expenses under Rule 37(a)(5)(A) by failing to provide a well-developed argument on the issue in her opening brief."). When fees are not automatic, courts sometimes reach a holding regarding whether the fee applicant is entitled to fees, and grant leave to submit a separate fee application regarding the reasonableness of the rates requested and hours expended. *See, e.g.*, *Reyes-Fana v. Moca Grocery NY Corp.*, No. 21CV4493, 2022 WL 5428688, at *15–16 (E.D.N.Y. Aug. 16, 2022), *report and recommendation adopted*, No. 21CV4493, 2022 WL 4094241 (E.D.N.Y. Sept. 7, 2022) (holding that plaintiff was "prevailing

---

[6] In fact, the authorities to which Plaintiff cites in the opening submission plainly state this requirement. *See Reiter v. Maxi-Aids, Inc.*, No. 14CV3712, 2019 WL 1641306, at *3, *3 n.3 (E.D.N.Y. Apr. 16, 2019) ("[Plaintiff] has not argued, much less established, that he has a statutory or contractual right to recover attorneys' fees as to either of [the counterclaims]. Absent a statutory or contractual basis for recovery of attorneys' fees, the American Rule applies. . . . As there is no basis for recovery of these fees, analysis of the reasonableness of the charges is unnecessary.").

party" and thus entitled to recover fees in FLSA case, and granting leave to file fee application with relevant documentation because plaintiff had not done so). Thus, except when a fee award is automatic, a party must either address entitlement in briefing the underlying motion, or in the separate, subsequent fee application.

Because a party moving for attorneys' fees bears the burden of establishing some entitlement thereto, the movant must *properly* raise such arguments, lest they be waived. As a general rule, "[i]t is well-established that '[a]rguments may not be made for the first time in a reply brief.'" *Zirogiannis v. Seterus, Inc.*, 221 F. Supp. 3d 292, 298 (E.D.N.Y. 2016) (quoting *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993)), *aff'd*, 707 F. App'x 724 (2d Cir. 2017). "[T]hat rule enjoys an exception – 'reply papers may properly address new material issues raised in the opposition papers so as to avoid giving unfair advantage to the answering party.'" *Alvarez*, 661 F. Supp. 3d at 23; *Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G.*, 215 F.3d 219, 226–27 (2d Cir. 2000) (same). However, even when an argument is responsive to a point advanced in opposition, courts often decline to consider such arguments when they were clearly available to the movant in the opening memorandum, or if the argument addresses a necessary element of the standard for that motion, thus requiring the movant to establish it in the first instance. *See, e.g.*, *Cadoret v. Sikorsky Aircraft Corp.*, 323 F. Supp. 3d 319, 327, 327 n.7 (D. Conn. 2018) (rejecting argument available on opening memorandum); *Bravia Cap. Partners, Inc. v. Fike*, 296 F.R.D. 136, 144 (S.D.N.Y. 2013) (finding it improper to raise, for first time on reply, argument establishing necessary element of applicable standard); *Alford v. City of New York*, 413 F. Supp. 3d 99, 109 (E.D.N.Y. 2018) (rejecting argument available on opening memorandum); *U.S. ex rel. Karlin v. Noble Jewelry Holdings Ltd.*, No. 08-CIV-7826, 2012 WL 1228199, at *5 (S.D.N.Y. Apr. 9, 2012) (rejecting argument and evidence establishing necessary element of applicable standard). To this

end, courts often examine whether a movant should have anticipated the issue in their opening papers. *See Bricklayers Ins. & Welfare Fund Bricklayers Pension Fund v. P.P.L. Constr. Servs. Corp.*, No. 12-CV-3940, 2015 WL 1443038, at *8 (E.D.N.Y. Mar. 27, 2015). Put simply, an argument is not a "new material issue" if a party should have, or was required to have, raised it from the outset. Otherwise, movants could simply file deficient motions, only to cure the deficiencies on reply after their opponents predictably argue that their submissions were defective and failed to meet the burden, thus depriving their opponent of the opportunity to respond to the arguments or evidence ultimately advanced. *In re Various Grand Jury Subpoenas*, 235 F. Supp. 3d 472, 485 (S.D.N.Y. 2017), *modified*, No. 12 MISC. 381, 2017 WL 564676 (S.D.N.Y. Feb. 13, 2017) ("Generally, a court does not consider issues raised in a reply brief for the first time because if a party raises a new argument in a reply brief the opposing party may not have an adequate opportunity to respond to it." (citation omitted)); *see Alford*, 413 F. Supp. 3d at 106 n.5 (noting that parties should not use replies to remedy deficiencies in opening submissions); *Karlin*, 2012 WL 1228199, at *5 ("The . . . contemporaneous records should have been submitted . . . when the motion [for attorneys' fees] was filed, so that the defendants could make an informed response . . . . Considering the . . . records—submitted for the first time in reply—would be fundamentally unfair . . . , because it would deprive [defendants] of an opportunity to respond."); *Bravia*, 296 F.R.D. at 144 (failure to argue reasonableness of rates sought in opening submission deprived defendants of opportunity to present opposing argument regarding *Johnson* factors). Applying this principle to the present motion, Plaintiff must either have properly raised entitlement to fees in Plaintiff's opposition to the motion to disqualify, or in the opening submission on the motion for attorneys' fees, in order for Defendants to have been afforded proper opportunity to respond.

Here, Plaintiff's memorandum in opposition to the motion to disqualify twice requested attorneys' fees. The first request stated as follows: "This [C]ourt should therefore deny, in its entirety, Defendants' Motion to Disqualify. Moreover, Plaintiff respectfully requests the issuance of an award of attorneys' fees and costs incurred in the opposition of Defendants' frivolous application." Pl.'s Opp'n, at 2. Thereafter, in conclusion, Plaintiff stated as follows:

> This court should not entertain Defendants' frivolous motion. There exists no set of facts implicating proper grounds for the disqualification of Plaintiff's counsel. Defendants merely seek to delay this litigation. Defendants' Motion to Disqualify must be denied its entirety. Moreover, Plaintiff respectfully requests the issuance of an award of attorneys' fees and costs incurred in the opposition of Defendants' application. We submit that given the totality of the circumstances and the absence of any legitimate argument, an award of costs and fees is particularly appropriate.

Pl.'s Opp'n, at 11.

In deciding the motion to disqualify, however, the Court *declined* to address Plaintiff's fee request, noting that Plaintiff's request was deficient because "Plaintiff ha[d] not requested a specific amount to be awarded, nor ha[d] Plaintiff presented evidence demonstrating that such amounts would be reasonable." M&O, at 8. In doing so, the Court cited caselaw for the proposition that "*even where attorney's fees are recoverable*, the moving party retains the burden of demonstrating reasonableness." M&O, at 8 (citing *Eastern Sav. Bank, FSB v. Robinson*, No. 13-CV-7308, 2016 WL 3365091, at *8 (E.D.N.Y. May 9, 2016) *report and recommendation adopted*, No. 13-CV-7308, 2016 WL 3102021 (E.D.N.Y. June 2, 2016)) (emphasis added). Thus, the Court "granted [Plaintiff] leave to make a *formal motion* for attorney's fees with proper supporting documentation." M&O, at 8 (emphasis added); *see also id.* at 9.

Notably, courts often allow parties to submit separate motions for attorneys' fees and, in some circumstances, withhold decision regarding entitlement until the separate application is made. *See, e.g.*, *J&J Sports Prods., Inc. v. Dowling*, No. 18 CV 5086, 2021 WL 4311321, at *1

(E.D.N.Y. July 19, 2021), *report and recommendation adopted*, No. 18-CV-5086(EK)(RML), 2021 WL 4311171 (E.D.N.Y. Sept. 21, 2021); *Reyes-Fana*, 2022 WL 5428688, at \*15–16 (holding that plaintiff was "prevailing party" and thus entitled to recover fees in FLSA case, and granting leave to file fee application with relevant documentation because plaintiff had failed to support reasonableness of fees); *Aquino by Convergent Distribs. of Texas, LLC v. Alexander Cap., LP*, 708 F. Supp. 3d 495, 511–12 (S.D.N.Y. 2023) (describing court order deferring ruling on request for fees incurred in opposing motion to disqualify). In the foregoing discussion, the Court reached no holding with respect to Plaintiff's entitlement to fees, as such holding would have been explicit. *Compare* M&O, at 8, *with Reyes-Fana*, 2022 WL 5428688, at \*15–16 (ruling that plaintiff was statutorily entitled to fees as "prevailing party" in FLSA action before granting leave to file separate fee application), *and Kotuwage v. NSS Petroleum Inc.*, No. 15-CV-4374 (FB) (ST), 2019 WL 1370692, at \*1 (E.D.N.Y. Mar. 6, 2019), *report and recommendation adopted as modified sub nom. Kotuwage v. Bilt Petroleum, Inc.*, No. 15-CV-4374 (FB) (ST), 2019 WL 1370091 (E.D.N.Y. Mar. 26, 2019) (this Court, explicitly holding that "Plaintiff's counsel seeks reasonable attorneys' fees, which, as the prevailing party, he is entitled to recover under both the FLSA and NYLL"). In fact, by contrast, the authority to which the Court cited for the proposition that "*even where attorney's fees are recoverable*, the moving party retains the burden of demonstrating reasonableness," did contain such an explicit holding. *See E. Sav. Bank, FSB*, 2016 WL 3365091, at \*8 ("[B]oth the Note and the Mortgage provide for reasonable attorneys' fees in the event Plaintiff brings a lawsuit in response to the Homeowner Defendants' default. . . . Therefore, Plaintiff is entitled to . . . attorneys' fees."). As a result, the Court's conclusion did not obviate the need for Plaintiff to present an argument regarding the threshold, necessary element of entitlement.

Indeed, the Court made no such holding because the brief in question did not adequately argue the issue in order for the Court to reach a holding thereon.

In arguing that a party is entitled to fees, perfunctory statements that fees are warranted because a motion was "frivolous" or lacked "any legitimate argument" are not sufficient, in that they fail to even make clear that the request at issue is one for sanctions. *See* Pl.'s Opp'n, at 2, 11. Moreover, while Plaintiff's opposition also made numerous statements that the motion to disqualify was "a thinly veiled ploy," based on "conjecture" and "supposition," "clearly flawed," foreclosed by "[e]ven a cursory review of the facts," "nonsensical," and made in "bad faith," all of these statements, apart from the two detailed previously, were presented in arguing that Defendants' motion to disqualify should be denied, *not* in requesting an award of attorneys' fees, and amount to little more than emphatic language in opposition to that motion. *See* Pl.'s Opp'n, at 1, 3–9, 11. Even assuming one could infer that Plaintiff utilized such strongly-worded language in order to support the request for fees, Plaintiff's opposition, as a whole, presents no discernable or sufficient argument regarding entitlement, in that it articulates no rule statements for sanctions, fails to analyze the motion to disqualify under any such rules, and was wholly unsupported by any caselaw pertaining to sanctions. *See LCS Grp., LLC v. Shire Dev. LLC*, No. 20-2319, 2022 WL 1217961, at *3 n.1 (2d Cir. Apr. 26, 2022) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (quoting *Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001)); *see also United States v. Reyes*, 819 F. App'x 41, 44 (2d Cir. 2020) (quoting *United States v. Botti*, 711 F.3d 299, 313 (2d Cir. 2013)) (same). Indeed, while automatic entitlement to fees might obviate the need to present argument on the issue, a party is by no means automatically entitled to an award of sanctions. *See Yukos*, 977 F.3d at 235 (sanctions are discretionary, and a court may decline to award sanctions even if it has found that

wrongdoing occurred); *cf. Wager*, 2021 WL 293076, at *4–5 (holding that a party was entitled to request fees in a perfunctory manner without presenting argument for entitlement because an award of fees is mandatory to a successful movant on a motion to compel). Thus, Plaintiff should have reasonably foreseen that Plaintiff would be required to present some argument with respect to the threshold issue of entitlement in Plaintiff's opening submission.

However, Plaintiff's opening motion for attorneys' fees makes three perfunctory statements that Plaintiff is entitled to fees, devoid of legal citations, and entirely unrelated to the doctrine of sanctions. First, in a heading, the brief states that "Plaintiff is Entitled to Attorneys' Fees as a Successful Movant." Pl.'s Mem., at 1. Apart from motions to compel under FRCP 37, the Court is unaware of any doctrine or statute under which a movant is entitled to fees as a matter of right, simply by means of having prevailed on a motion, and Plaintiff cites to no authority to the contrary. The import of this perfunctory contention is thus unclear.

Next, Plaintiff's brief argues: "When presented with a fee application by the prevailing party, the Court must determine the reasonable amount of attorneys' fees to be awarded." Pl.'s Mem., at 2. If Plaintiff ultimately prevails in this FLSA and NYLL action, Plaintiff would, indeed, be entitled to fees as a "prevailing party" under the applicable fee-shifting provisions of those statutes. *Callari*, 2020 WL 2771008, at *6 (collecting cases discussing fee-shifting provisions of FLSA and NYLL, and discussing "prevailing party" doctrine). However, that is not the posture of this case.

Finally, Plaintiff's motion states that the "'usual hourly billing rates charged to paying clients . . . are reasonable rates of compensation' . . . under fee-shifting statutes." Pl.'s Mem., at 4 (citation omitted). But, again, there is no fee-shifting statute presently applicable to this case. Notably absent from the submission is any mention of the word "sanction" or any citations to

16

sanctions doctrine. Moreover, Plaintiff cannot reasonably contend to have been unaware of the need to argue entitlement, as the authorities to which Plaintiff cites in the opening submission explicitly state that such an argument is required. *See Reiter*, 2019 WL 1641306, at *3, *3 n.3 ("[Plaintiff] has not argued, much less established, that he has a statutory or contractual right to recover attorneys' fees as to either of [the counterclaims]. Absent a statutory or contractual basis for recovery of attorneys' fees, the American Rule applies. . . . As there is no basis for recovery of these fees, analysis of the reasonableness of the charges is unnecessary."). Thus, Plaintiff's opening submission failed to raise the issue of sanctions. *See LCS Grp.*, 2022 WL 1217961, at *3 n.1 ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (quoting *Tolbert*, 242 F.3d at 75); *see also Reyes*, 819 F. App'x at 44 (quoting *Botti*, 711 F.3d at 313) (same).

In response, Defendants raise this deficiency, arguing that Plaintiff failed to point to any statute or doctrine under which Plaintiff would be entitled to attorneys' fees, and noting that Plaintiff cited only to cases regarding fee-shifting statutes. Defs.' Opp'n, at 1. Defendants proceed by arguing that, under the American Rule, a party is not entitled to fees unless there is an applicable exception, citing to *Colombrito v. Kelly*, 764 F.2d 122, 133 (2d Cir. 1985). Defs.' Opp'n, at 1. Defendants continue by quoting *Colombrito*'s ruling that "[t]he only pertinent exception [to the American Rule] for present purposes is the court's inherent authority to award fees when a party litigates frivolously or in bad faith." Defs.' Opp'n, at 1 (quoting *Colombrito*, 764 F.2d at 133). Defendants then argue that Plaintiff's motion for fees "does not allege that Defendants have litigated frivolously, had bad motive, or litigated in bad faith. Instead, Plaintiff alleges only that it is entitled to fees as the prevailing party with respect to the motion to disqualify." Defs.' Opp'n, at 2. In any event, Defendants argue, the motion to disqualify was not sanctionable. Defs.' Opp'n,

at 2–3. Notably, Defendants' argument that Plaintiff did not allege that the motion was frivolous or made in bad faith is not entirely accurate, because, as discussed, Plaintiff repeatedly used those terms in opposing the motion to disqualify.

On reply, in a section entitled "Plaintiff is Entitled to Attorneys' Fees Incurred Successful [sic] Defending Plaintiffs' Frivolous Motion that Sought to Deprive Plaintiff of an Inalienable Right," Plaintiff first argues that Defendants' argument "is without legal support." Pl.'s Reply, at 1. Plaintiff then continues as follows:

> . . . There exists ample legal precedent establishing that a party is entitled to attorneys' fees as a successful movant. The Second Circuit has held that the power to sanction derives from a federal court's "inherent power to control the proceedings that take place before the Court." *Ransmeier v. Mariani*, 718 F.3d 64, 68 (2d Cir. 2013) Thus, a federal court "may exercise its inherent power to sanction a party or an attorney who has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Id.* (holding the power to sanction attorneys under 28 U.S.C. § 1927 for attorneys "who so multiplies the proceedings in any case unreasonably and vexatiously is 'supplementary' to inherent powers"). Sanctions in the form of attorneys' fees are appropriate where "(1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith—that is, 'motivated by improper purposes such as harassment or delay.'" *Armatas v. Maroulleti*, No. 08-CV-0310 (SJF)(RER), 2016 U.S. Dist. LEXIS 80909, at *11 (E.D.N.Y. June 21, 2016) (quoting *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000)).
>
> The underlying application at issue was filed by Defendants in a desperate attempt to deprive Plaintiff of his inalienable right to counsel of his choosing. Moreover, the application resulted in delay of the adjudication of this matter. . . .
>
> Defendants offered no arguments in support of their motion that could even be considered legitimate. In fact, the Court, on a number of occasions, called into question the lack of merit in Plaintiff's application. Such examples include . . . .
>
> The frivolity in Defendants' application is precisely the type of tactical approach that Courts warn of. Defendants, knowing their motion was wholly without legal support, filed it regardless, resulting in both a delay in the adjudication of this matter and for this office to expend otherwise unnecessary time and resources. Defendants still have not yet acknowledged their fault in moving to disqualify Plaintiff's Counsel. Defendants argue in their opposition to Plaintiff's fee application that their application was reasonable and that they continue to believe that Plaintiff's Counsel should be disqualified. Accordingly, awarding Plaintiff attorneys' fees is necessary both to compensate for the unnecessary time and resources expended, but also to deter Defendants from engaging in further frivolous and oppressive motion practice.

Pl.'s Reply, at 1–3. Notably, while the above argument was substantial, none of these points were mentioned in Plaintiff's initial submission. Moreover, that Plaintiff engaged in such lengthy analysis of the sanctions doctrines on reply demonstrates that such arguments were available, as none of the above arguments above are reliant upon points Defendants needed to raise in order for Plaintiff to formulate them. Thus, this is not a circumstance in which Plaintiff's argument can be properly considered "responsive" to Defendants' argument in opposition. Plaintiff bore the burden, in the first instance, to establish entitlement to fees, a threshold issue which is examined by courts as a matter of routine practice before proceeding to address the lodestar doctrine, as the authorities upon which Plaintiff relied plainly state. *See* Pl.'s Mem., at 1 (citing *Reiter*, 2019 WL 1641306); *Reiter,* 2019 WL 1641306, at *3, *3 n.3 ("[Plaintiff] has not argued, much less established, that he has a statutory or contractual right to recover attorneys' fees as to either of [the counterclaims]. Absent a statutory or contractual basis for recovery of attorneys' fees, the American Rule applies. . . . As there is no basis for recovery of these fees, analysis of the reasonableness of the charges is unnecessary."). Entitlement to fees is a routine, threshold question that must be established in an opening submission, or prior, and Plaintiff waived the issue by not properly raising it.

Indeed, courts have specifically held that fee applicants cannot argue or establish the necessary standards for fee applications via argument made on reply. For example, courts have foreclosed raising the reasonableness of the fees sought on reply, as the reasonableness standard is well-known and essential to any fee motion. *Karlin*, 2012 WL 1228199, at *5 ("The reply was not the Relator's first opportunity to provide evidence of contemporaneous records, based on which, as the Second Circuit has explained, any award of reasonable attorney's fees is conditioned."); *Bravia*, 296 F.R.D. at 144 ("[I]t was not proper for Fike to submit, for the first time in her reply to the plaintiff[']s challenge to her fee application, evidence and arguments justifying

the reasonableness of the fees sought. Fike was obligated, in her initial moving papers, not in her reply, to provide evidence supporting . . . reasonableness."). Entitlement to fees, whatever the ground, is also a well-established prerequisite.

In sum, while Plaintiff did state, in its opposition to the motion to disqualify, that the motion was "frivolous" and made in "bad faith," Pl.'s Opp'n, at 2–3, 8–9, 11, this is not enough to constitute a proper argument regarding entitlement to sanctions. Indeed, most of these statements were not even made in arguing for fees. Moreover, the Court never addressed these statements nor ruled that Plaintiff was entitled to fees, much less fees based upon sanctions, nor made any of the requisite findings regarding frivolity or bad faith, with a high degree of factual specificity, in order to hold that sanctions are warranted, because those statements did not present sufficient argument in order to reach such holdings. *Wolters Kluwer*, 564 F.3d at 114 (award of sanctions "must be supported by a high degree of specificity in the factual findings"). Plaintiff, in fact, in responding to Defendants' argument that Plaintiff failed to establish grounds for entitlement, makes no argument that the Court already held Plaintiff to be so entitled. *See* Pl.'s Reply, at 1–3. Thus, Plaintiff raised the argument for sanctions for the first time on reply, which Plaintiff is foreclosed from doing, because the argument is not responsive to "new material issues raised in the opposition papers." *Alvarez*, 661 F. Supp. 3d at 23. Rather, Plaintiff's entitlement to fees became a "material issue" by reason of Plaintiff moving for attorneys' fees, as entitlement is a requisite element of such a motion. Defendants' argument in opposition merely raises the facial deficiency of Plaintiff's motion.

One might infer that Plaintiff mistakenly recycled briefing language from a prior fee application under an applicable fee-shifting statute, in response to the Court's ruling granting

Plaintiff leave to submit a formal motion for attorneys' fees.[7] While this may have been a mere mistake, or perhaps a misunderstanding of the Court's statements that "Plaintiff ha[d] not requested a specific amount to be awarded, nor ha[d] Plaintiff presented evidence demonstrating that such amounts would be reasonable," and thus Plaintiff was "granted leave to make a formal motion for attorney's fees with proper supporting documentation," M&O, at 8, the constitutional due process concerns attendant to an award of sanctions make sanctions a particularly inappropriate context to exercise discretion to consider arguments raised on reply, even were the Court so inclined. *See Bricklayers*, 2015 WL 1443038, at *7 ("A district court enjoys broad discretion . . . to consider arguments made for the first time in a reply brief." (quoting *Compania del Bajo Caroni (Caromin), C.A. v. Bolivarian Rep. of Venez.*, 341 F. App'x 722, 724 (2d Cir. 2009)). Specifically, all three potential categories of sanctions—Rule 11, 28 U.S.C. § 1927, and inherent powers—have a constitutional, procedural prerequisite of notice and opportunity to be heard, which must be met before examining whether, substantively, the conduct is sanctionable under a given doctrine.[8] *Chang*, 605 F. Supp. 3d at 545 (collecting Second Circuit cases for all three doctrines); *Gollomp*, 568 F.3d at 368 (noting that notice and opportunity to be heard are procedural prerequisites to the substantive standards). Moreover, a party must receive notice of the *specific* doctrine under which sanctions are being considered. *In re 60 E. 80th*, 218 F.3d at 117; *L.B. Foster*, 138 F.3d at 89 ("[I]f sanctions are to be imposed pursuant to § 1927, a notice that sanctions are sought under Rule 11 is insufficient." (citing *Ted Lapidus,* 112 F.3d at 96–97)). The

---

[7] Indeed, the declaration submitted in support of the motion for attorneys' fees concludes that "by reason of the foregoing, and as a result of the evidence adduced during the trial and otherwise contained in the record, Plaintiff's Motions for Attorneys' Fees and Expenses should be granted in its entirety," Zabell Decl., at 9, ECF No. 71–1, although this case has not gone to trial.

[8] Plaintiff only seeks sanctions pursuant to 28 U.S.C. § 1927 or the Court's inherent powers (or, as discussed, perhaps only inherent powers). Plaintiff never mentions or cites to Rule 11, and there is no indication that Plaintiff performed the steps necessary to satisfy the 21-day safe harbor requirement.

party facing sanctions must then have the opportunity to be heard, whether via a hearing or a responsive brief. *In re 60 E. 80th*, 218 F.3d at 117.

Because Plaintiff did not even mention sanctions until the reply brief, Defendants did not have adequate notice that sanctions were being sought, much less the doctrine under which they were being sought. While Plaintiff, in opposing the motion to disqualify, used the words "frivolous" and "bad faith" several times, Pl.'s Opp'n, at 2–3, 8–9, 11, this is not sufficient. Even if one were to infer that frivolity and bad faith likely refer to *a* sanctions doctrine, it would nevertheless be unclear *which* sanctions doctrine, as frivolity and bad faith are also discussed by courts when examining Rule 11 sanctions, including this Court. Fed. R. Civ. P. 11(b); *Mata*, 678 F. Supp. 3d at 459–60, 462 (discussing frivolity and bad faith in Rule 11 context); *Ammann v. Sharestates, Inc.*, No. 21-CV-2766 (JS) (ST), 2024 WL 1956237, at *2–4, *10–11 (E.D.N.Y. Mar. 21, 2024), *report and recommendation adopted*, Order (June 17, 2024) (this Court, discussing frivolity and improper purpose); *S. Pac. Shipping Co. Inc. v. Redi-Fresh Produce Inc.*, No. 14 CIV. 4157, 2014 WL 6968039, at *10–11 (S.D.N.Y. Dec. 9, 2014) (examining bad faith).

While Rule 11 cases often use the term "improper purpose" rather than "bad faith," presumably because the text of Rule 11 uses the former, *see* Fed. R. Civ. P. 11(b)(1), "bad faith" in the context of inherent powers and § 1927 sanctions is defined as action taken with "improper purposes," *Schlaifer Nance*, 194 F.3d at 336, *Gollomp*, 568 F.3d at 368, and thus courts often use the terms interchangeably and in both contexts. *See Mata*, 678 F. Supp. 3d at 459–60, 462 (discussing frivolity and bad faith in Rule 11 context); *S. Pac. Shipping Co.*, 2014 WL 6968039, at *10–11 (examining bad faith). Thus, one cannot readily discern, from the use of those terms, any relation to a *specific* sanctions doctrine. As the Second Circuit requires that the specific doctrine under which sanctions are sought be identified, this procedural defect is fatal to the

imposition of sanctions. *L.B. Foster*, 138 F.3d at 89 ("[I]f sanctions are to be imposed pursuant to § 1927, a notice that sanctions are sought under Rule 11 is insufficient." (citing *Ted Lapidus,* 112 F.3d at 96–97)).

Defendants therefore had inadequate notice for purposes of due process. This is further supported by the fact that Plaintiff's opening submission on the instant motion for attorneys' fees, which was apparently intended to be a motion for *sanctions* with fees simply being the sanction in question, not only fails to specify any applicable sanctions doctrine, but also fails to utilize the terms "frivolous" or "bad faith" that had been used in opposing the motion to disqualify. *See generally* Pl.'s Mem.

Although Defendants presented an argument opposing sanctions, and thus had an opportunity to be heard, the Court finds that this does not obviate the notice requirement in this circumstance. Defendants' argument that Plaintiff failed to identify any grounds entitling Plaintiff to an award of fees is, in sum and substance, an argument that Plaintiff's motion provided inadequate notice. *See* Defs.' Opp'n, at 1–2. That Defendants then proceeded to accurately predict the sanctions argument Plaintiff would present and argue it on its merits amounted to little more than fortuitous guesswork, presumably intended to "cover all the bases." Indeed, it is entirely possible that, in arguing that Plaintiff had failed to raise inherent powers sanctions, Defendants drew Plaintiff's attention to the argument for inherent powers sanctions. In any event, Defendants properly raised their objection to the imposition of sanctions on the grounds that inadequate notice was provided, and the Court does not find that objection to be waived merely because they argued, in the alternative, that the motion to disqualify was nevertheless made in good faith. This is especially so given the context of this motion, in which sanctions are sought by a movant, rather than *sua sponte* following an order to show cause from the Court. Plaintiff, in moving for fees as

a sanction, bears a high burden of persuasion given the extreme circumstances for which sanctions are generally reserved. *See Sakon*, 119 F.3d at 114–15 (reaffirming that inherent powers sanctions are only upheld "when serious misconduct clearly appears on the record" (quoting *Milltex Indus.*, 55 F.3d at 41)); *Cole*, 365 F. Supp. 3d at 336 (noting that courts, in deciding whether to impose sanctions, should exercise "great caution" (quoting *Mone*, 774 F.2d at 574)); *Jimenez v. Senior Exch., Inc.*, No. 23-CV-323, 2024 WL 1833808, at *7 (S.D.N.Y. Apr. 26, 2024) (burden of persuasion on motions under either § 1927 or inherent powers is on the movant). To that end, as Defendants' argument regarding inadequate notice was entirely correct under binding caselaw, *cf. Schlaifer Nance*, 194 F.3d at 334–35 (finding notice proper because it *named* all three potential sources for sanctions, when only two were sought), the Court credits that argument, notwithstanding Defendants' opportunity to argue the substantive merits. If Plaintiff intended the instant motion to be a motion for sanctions, it was incumbent upon Plaintiff to make the appropriate grounds clear, by identifying a *specific* basis for sanctions, in its opening submissions. *Id.*; *Ted Lapidus*, 112 F.3d at 96–97.

Thus, the Court finds that Plaintiff waived the argument regarding entitlement to fees under well-established caselaw foreclosing parties from arguing issues for the first time on reply, and because Plaintiff's argument asserted on reply is procedurally and constitutionally improper in the context of sanctions. Moreover, while inherent powers and § 1927 sanctions do not need to be raised by a movant, and can instead be issued *sua sponte*, provided the adequate notice, typically via an order to show cause, is given, *but see In re 60 E. 80th*, 218 F.3d at 113, 117–18 (upholding *sua sponte* § 1927 sanctions imposed after court ordered party to show cause during oral argument), the Court nevertheless declines to issue an order to show cause, because Plaintiff's sanctions argument fails on its merits.

## II.     Sanctions Are Not Warranted Because the Motion to Disqualify Was Not Entirely Without Color or Filed in Bad Faith.[9]

As discussed, "[t]o impose sanctions under either § 1927 or this Court's inherent powers, there must be *clear evidence* that '(1) the offending party's claims were entirely without color, <u>and</u> (2) the claims were brought in bad faith—that is, motivated by improper purposes such as harassment or delay.'" *Prevezon Holdings*, 305 F. Supp. 3d at 478–79 (quoting *Eisemann*, 204 F.3d at 396) (first emphasis added); *see also Huebner*, 897 F.3d at 55–56 (same). There must be a high degree of factual specificity to support such findings. *Wolters Kluwer*, 564 F.3d at 114; *see also Prevezon Holdings*, 305 F. Supp. 3d at 478. Under the first prong of this conjunctive test, "a claim is entirely without color when it lacks *any* legal or factual basis." *Schlaifer Nance*, 194 F.3d at 337 (emphasis in original); *see also Prevezon Holdings*, 305 F. Supp. 3d at 479. Indeed, "[t]he question is whether a reasonable attorney . . . could have concluded that facts supporting the claim *might be established*, not whether such facts actually *had been established*." *Schlaifer Nance*, 194 F.3d at 337 (emphasis in original) (quotations and citation omitted); *see also Prevezon Holdings*, 305 F. Supp. 3d at 479. Under the second prong, subjective bad faith, "the court must conclude that the action was 'asserted wantonly, for purposes of harassment or delay, or for other improper reasons.'" *Robinson*, 614 F. Supp. 3d at 76 (quoting *Browning Debenture*, 560 F.2d at 1088). Ultimately, such sanctions are only appropriate "when serious misconduct clearly appears on the record." *Sakon*, 119 F.3d at 114–15 (quoting *Milltex Indus.*, 55 F.3d at 41).

Taking Plaintiff's brief in opposition to the motion to disqualify and reply on the instant motion together, Plaintiff's argument under the first prong, meritlessness, can be summarized as

---

[9] Many of the arguments discussed herein, when derived from Plaintiff's opposition to the motion to disqualify, were presented to oppose disqualification, not to advance an argument for sanctions. As discussed, these arguments are waived. Nevertheless, the Court cites to them in examining sanctions on the merits because they do, in some instances, tend to clarify the arguments Plaintiff ultimately raised in support of sanctions.

follows: Defendants' motion was frivolous because it was based on conjecture which, even if true, would not meet the standard for disqualification. Pl.'s Opp'n, at 2–3. Indeed, Plaintiff argues that the motion was based upon "clearly flawed" logic, was unsupported by "[e]ven a cursory review of the facts," was "nonsensical," had "no rational basis" to support it, was devoid "of any legitimate argument," and lacked merit, in that it "failed to meet even the most threshold of issues." Pl.'s Opp'n, at 4–5, 7–9, 11; Pl.'s Reply, at 2–3. In essence, Plaintiff argues that Defendants' motion to disqualify was meritless because it failed to meet the standard for disqualification.

This, however, is not enough. An argument is not rendered entirely without color merely because it is unpersuasive or fails to meet the standard of relief sought. *Aquino*, 708 F. Supp. 3d at 512 (holding that motion to disqualify which "lacked merit" and "came nowhere near establishing" the standard for disqualification" was nevertheless not "utterly devoid of . . . [a] factual basis" and thus was not sanctionable under the court's inherent powers or § 1927); *Schlaifer Nance*, 194 F.3d at 337 ("[A] claim that fails as a matter of law is not necessarily lacking *any* basis at all." (emphasis in original)); *Robinson*, 614 F. Supp. 3d at 82 (finding claim not entirely without color because the "arguments [we]re coherent and supported at least to some extent by case law and factual assertions"). Rather, to be entirely without color, the argument must lack "*any* legal or factual basis" to support it, and courts look to whether an attorney might reasonably have believed that supportive facts *might* be established. *Schlaifer Nance*, 194 F.3d at 337 (emphasis in original).

Here, while Defendants' motion to disqualify was certainly unpersuasive, it was not devoid of *any* legal or factual basis. Indeed, while the burden of persuasion on a motion to disqualify is quite high, disqualification is nevertheless discretionary, and doubts are resolved in favor of disqualification. *Giambrone v. Meritplan Ins. Co.*, 117 F. Supp. 3d 259, 267 (E.D.N.Y. 2015). These precedents do lend some credence to the notion that Defendants' motion at least had some

potential legal support. *See Schlaifer Nance*, 194 F.3d at 337 ("[A] claim that fails as a matter of law is not necessarily lacking *any* basis at all. . . . [A] claim lacks a colorable basis when it is utterly devoid of a legal or factual basis." (emphasis in original)).

Moreover, as Plaintiff argued, disqualification under the advocate-witness rule applies to testimony at trial, and is thus premature when brought during discovery. Pl.'s Opp'n, at 7; *see Kim v. Kimm*, 884 F.3d 98, 106 (2d Cir. 2018) (reaffirming that rule applies to testimony at trial). Plaintiff, in fact, argued that discovery would further prove that Plaintiff's counsel would not be necessary witnesses. Pl.'s Opp'n, at 3, 6–7. Put another way, Plaintiff conceded that there were outstanding facts related to Plaintiff's participation in the Wunk matter that had yet to be established. By very nature of being unknown, that these facts would be unfavorable to Defendants' position was by no means a foregone conclusion. *See Schlaifer Nance*, 194 F.3d at 337 (ruling that courts, in deciding whether to impose sanctions, look to whether reasonable attorney could believe facts *might* be established). To this end, Defendants stated from the outset, in their memoranda for the motion to disqualify, that they brought the motion "in the beginning of the case, prior to substantial discovery, as soon as [Defendants] had enough information to support moving for such relief" in order to avoid delays that might occur if new counsel was retained and needed time to apprise themselves of the facts of the case. Defs.' Reply Mem. Law Supp. Defs.' Mot. Disqualify ("Defs.' Reply"), at 10–11, ECF No. 25; Defs.' Opp'n, at 2–3. Moreover, the arguments Defendants advanced specifically relied upon the premise that the facts surrounding Plaintiff's participation in the Wunk matter had not yet been established, and would need to be established. Thus, it cannot be said that Defendants had no reasonable basis to believe that facts supportive to their position might be established.

Indeed, some relevant facts already had been established, as Plaintiff's counsel "did have some involvement in relevant events." *Aquino*, 708 F. Supp. 3d at 512 (holding that award of fees incurred opposing motion to disqualify brought pursuant to advocate-witness rule were not warranted because, while lacking in merit, the motion was not "entirely without color" because counsel in question "did have some involvement in relevant events"). Specifically, Plaintiff's retaliation claim alleges that Defendants learned, through the process of discovery in the Wunk matter, that Plaintiff had recorded conversations with the individual Defendant and provided them either to Ms. Wunk or her counsel to assist with that matter, and that Plaintiff was terminated shortly after a settlement was reached in the Wunk matter. Plaintiff's counsel prepared and sent the discovery materials in the Wunk matter, and facilitated the settlement. As a result, Plaintiff's counsel did have at least some involvement in relevant events, from which they did have some degree of personal knowledge. Thus, while Defendants "came nowhere near establishing that [Plaintiff's counsel] had sufficient personal knowledge *to warrant their disqualification*, . . . it cannot be said the motion was 'utterly devoid of . . . [a] factual basis.'" *Id.* (quoting *Schlaifer Nance*, 194 F.3d at 337). Thus, the motion was not entirely without color.[10] As the test for the

---

[10] Plaintiff also argues that Defendants knowingly made false assertions in the motion to disqualify by arguing that Plaintiff's counsel had "exclusive knowledge" of the extent of Plaintiff's participation in the Wunk matter and the date on which the Wunk matter reached a settlement. Pl.'s Opp'n, at 4–5; Pl.'s Reply, at 2–3. However, Defendants' use of the phrase "exclusive knowledge" appears to, to some extent, simply be inartful phrasing. For example, Defendants' briefing stated that Plaintiff's counsel had "exclusive knowledge" regarding Plaintiff's participation, but Defendants' submissions also explicitly noted that Plaintiff had that knowledge, and that the testimony would be utilized for impeachment purposes. Mot. Disqualify, at 7; Defs.' Reply, at 4. With respect to Plaintiff's participation, while it perhaps would have been more accurate to state that the testimony "would be used for an exclusive *purpose*," the point being made was nevertheless discernable. Indeed, it may not even be strictly inaccurate, as it does state that Plaintiff's counsel had "exclusive knowledge" of matters including "filing and providing material for discovery." Mot. Disqualify, at 7. Plaintiff's counsel was, indeed, exclusively responsible for *transmitting* the discovery.

With respect to whether Plaintiff's counsel had exclusive knowledge of the settlement date, Plaintiff argues that the Court "addressed Defendants' advancement of arguments they knew to be false," when the Court stated that "Defendants do not explain why Ms. Wunk would not also possess th[e] knowledge" of the date of settlement of her own dispute. Pl.'s Reply, at 2. However, the Court did not hold that Defendants' assertion was false. The Court denied the motion because Defendants had failed to make the necessary evidentiary showing *that it was true*. For example, it is entirely possible that Ms. Wunk may have authorized her counsel to settle, or the settlement was still being finalized, and thus Ms. Wunk might not know the date of settlement in principle. However, Defendants did not provide a factual

imposition of inherent powers or § 1927 sanctions is conjunctive, this alone renders the motion

unsanctionable. *See Datiz v. Int'l Recovery Assocs., Inc.*, No. 15-CV-03549, 2019 WL 1900472,

at *8 (E.D.N.Y. Apr. 29, 2019) (quoting *Sierra Club*, 776 F.2d at 390) (noting that test is

conjunctive).

For the second prong, bad faith, Plaintiff essentially argues that Defendants' motion was

"so completely without merit" as to warrant a conclusion that the motion was undertaken for an

improper purpose. More specifically, Plaintiff argues that "Defendants, knowing their motion was

wholly without legal support, filed it regardless" in order to delay and expend Plaintiff's counsel's

time and resources. Pl.'s Reply, at 3; *see also id.* ("Defendants' motion failed to meet even the

most threshold of issues."); Pl.'s Opp'n, at 8–9 (arguing that Defendants' conflict of interest

argument was based upon "a misunderstanding of agency so severe that its advancement colors

the pending application in bad faith" and a "flawed understanding of the effect of a waiver of

claims" such that it, too, amounted to "bad faith"); *id.* at 1, 3, 11. Plaintiff further argues that

Defendants' motion was designed "to gain a tactical advantage over [Plaintiff] by depriving him

of his choice in legal counsel."[11] Pl.'s Reply, at 4; *see also id.* at 2.

The Court is not persuaded. It is true that bad faith can be inferred from the meritlessness

of an argument or claim. *Schlaifer Nance*, 194 F.3d at 338 ("Bad faith can be inferred when the

actions taken are 'so completely without merit as to require the conclusion that they must have

---

[11] This argument appears to contradict the previous argument. Plaintiff, on the one hand, argues that Defendants'
motion was so completely without merit that it essentially had no chance of success, and that Defendants knowingly
filed the motion regardless, recognizing that Plaintiff's counsel would expend resources zealously opposing it. On the
other hand, Plaintiff argues that Defendants filed the motion expecting that it would successfully deprive Plaintiff of
his chosen counsel. Defendants cannot have both known the motion had no chance of success while also believing
that the motion might be successful. Moreover, unless one assumes that the Court was at risk of granting a sanctionably
meritless argument despite being presented with zealous, competent advocacy to the contrary, the latter argument
implicitly recognizes that the motion was not entirely without color.

explanation for why Ms. Wunk would not be a viable witness on this fact, and thus their motion failed to meet a
threshold evidentiary showing. Thus, while Court rejected the exclusive knowledge argument as unpersuasive, the
Court never held that Defendants misrepresented something to the Court or made false factual assertions.

been undertaken for some improper purpose.'" (citation omitted)); *Eisemann*, 204 F.3d at 397 ("It is sometimes possible to infer bad faith from the meritlessness of a motion."); *accord Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 144 (2d Cir. 2023). However, the Second Circuit has made clear that the sanctions test "is conjunctive and neither meritlessness alone nor improper purpose alone will suffice." *Sierra Club*, 776 F.2d at 390. For the test to be conjunctive, then, an inference of bad faith from meritlessness must require something more than what is required under the first prong, or else the two elements would collapse, and meritlessness alone would suffice. *Eisemann*, 204 F.3d at 397 (reversing sanctions because "the Court's conclusory determination [of] . . . bad faith rested almost entirely on [the motion's] lack of merit" and while "[i]t is sometimes possible to infer bad faith from the meritlessness of a motion . . . . [meritlessness] is not, *without more*, a proper basis for the imposition of sanctions" (emphasis added)); *Mahoney v. Yamaha Motor Corp. U.S.A.*, 290 F.R.D. 363, 367 (E.D.N.Y. 2013) ("A court should not deem a party to have acted in bad faith if solely predicated upon that party's filing of a meritless motion." (citation omitted)); *Gissendaner v. Credit Corp Sols., Inc.*, 358 F. Supp. 3d 213, 224 (W.D.N.Y. 2019) ("[G]eneral inferences of bad faith are disfavored . . . in this Circuit." (citation omitted)); *Schlaifer Nance*, 194 F.3d at 340–41 (finding that, while flawed, the actions constituted nothing more than "poor legal judgment" and there was "no evidence to suggest that [the attorneys] had utterly no basis for their subjective belief in the merits of their case," and thus finding of bad faith was not warranted). In fact, in order to find bad faith, a court must base its finding on specific facts. *Wolters Kluwer*, 564 F.3d at 114 (ruling that court's factual findings "must be supported by a high degree of specificity"); *accord Rossbach*, 81 F.4th at 141. Thus, "courts generally decline to impose sanctions where the purported sanctionable conduct boils down to . . . a misinterpretation of the law." *Cole*, 365 F. Supp. 3d at 338 (collecting cases); *Gissendaner*, 358 F. Supp. 3d at 225 (same,

collecting cases). By contrast, conduct that has been found to constitute bad faith has included "resubmitting a motion that had previously been denied; bringing a motion based on 'facts' the opposite of which were previously found by the court; [and] making several insupportable bias recusal motions and repeated motions to reargue," as well as other, similar examples. *Prevezon Holdings*, 305 F. Supp. 3d at 483–84 (quoting *Keller v. Mobil Corp.*, 55 F.3d 94, 99 (2d Cir. 1995)).

Even assuming the motion was entirely without color under the first prong, the motion certainly would not satisfy the heightened degree of meritlessness from which to draw an inference of bad faith. *See Eisemann*, 204 F.3d at 397. The conflict of interest argument, which the Court found wholly unpersuasive in that it failed to allege any adversity between the two represented parties, appears to have been a misinterpretation of the law, rather than an argument advanced in bad faith. While Defendants' motion argued at length that there was a concurrent conflict of interest, Defendants, in large part, based this argument on an element for subsequent conflicts of interest. Defs.' Reply, at 5–8. The Court noted that Defendants had misconstrued these tests in its opinion. M&O, at 6. Indeed, as the Second Circuit has held, arguments that are "not convincing" or "flawed," but which are nevertheless tied to "recognizable legal concepts" and are "not on [their] face absurd" do not warrant an inference of bad faith. *Zurich Am. Ins. Co. v. Team Tankers A.S.*, 811 F.3d 584, 591 (2d Cir. 2016). While the argument was flawed and ostensibly based upon a misinterpretation of the law—perhaps specifically conflating confidentiality and conflicts of interest—the Court cannot say that there were no "recognizable legal concepts" or that the motion was facially absurd.

Moreover, courts routinely find that conclusory allegations of bad faith are insufficient to support sanctions absent some supportive evidence. *See Rsch. Found. for State Univ. of New York*

*v. Telluric Labs, LLC*, No. 21-CV-1898, 2024 WL 3675901, at *4–5 (E.D.N.Y. Aug. 6, 2024) (collecting cases and holding that conclusory allegations of bad faith, including delay, not supported by other specific evidence in the record, is not enough to support bad faith); *Robinson*, 614 F. Supp. 3d at 82 (holding that Defendants provided "no evidence" to support conclusory allegation that motion was filed to increase costs of defense, and instead "suggest[ed] the Court reach this conclusion based solely on the weakness of [the] arguments," which "is hardly 'clear evidence' of bad faith, and absent such evidence, a finding of bad faith is not warranted"); *Carollo v. United Cap. Corp.*, No. 616CV00013, 2018 WL 1508562, at *4 (N.D.N.Y. Mar. 27, 2018) (declining to award attorneys' fees incurred opposing motion to disqualify because there was no evidence to support conclusory argument that motion was brought in bad faith to delay litigation); *Aquino*, 708 F. Supp. 3d at 512 (finding that speculation that motion to disqualify was motivated by desire to retaliate against opponent who had successfully disqualified movant's former counsel is a "circumstantial inference [which], standing alone, is insufficient to support 'a specific finding' of bad faith"). Here, Plaintiff's allegation that the motion was brought to delay is conclusory, as Plaintiff has pointed to no evidence in the record that might support that contention, and does not even explain why a delay might have been useful to Defendants. In fact, Plaintiff's reply brief did not respond to Defendants' argument that the motion to disqualify was brought early in order to minimize, rather than perpetuate, delay. Defs.' Opp'n, at 2–3; Pl.'s Reply, at 2–3. While much of the motion speculated regarding the facts that might be established, and speculation regarding testimony that will be elicited is not enough to support disqualification, *see John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 126 F. Supp. 3d 413, 423–24 (S.D.N.Y. 2015), the Court is not entirely unsympathetic to the contention that bringing a motion to disqualify early tends to minimize delay, given courts' general reluctance to disqualify counsel after substantial litigation

has occurred. *See In re Enron Corp.*, No. 01-16034, 2002 WL 32034346, at *3 (Bankr. S.D.N.Y. May 23, 2002) (emphasizing importance of addressing disqualification early in a case), *aff'd*, No. 02 CIV. 5638, 2003 WL 223455 (S.D.N.Y. Feb. 3, 2003); *Gorbaty v. Wells Fargo Bank, N.A.*, No. CV-10-3291, 2011 WL 318090, at *3 (E.D.N.Y. Feb. 1, 2011) (holding that disqualification early was preferable, rather than on the eve of trial); *cf. Giambrone*, 117 F. Supp. 3d at 268 n.8 (finding that party did not waive right to move for disqualification because the case had not progressed substantially). Instead of responding to the argument that the motion was filed early to minimize delay in good faith, Plaintiff merely argues that the motion to disqualify did, in fact, result in a delay, and thus was brought in bad faith. Pl.'s Reply, at 2–3. However, as the Second Circuit has noted, "even when made in the best of faith," motions to disqualify "inevitably cause delay." *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983) (citation omitted). That a motion to disqualify did, indeed, cause some delay is to be expected, and does not, on its own, establish a finding of subjective bad faith.

Having pointed to no additional evidence or corroboration, Plaintiff's argument is too conclusory to support a finding of bad faith. *See Telluric Labs*, 2024 WL 3675901, at *4–5 (collecting cases finding that "bald, conclusory allegations of bad faith" are not enough to support sanctions); *Schlaifer Nance*, 194 F.3d at 338 ("[T]he court's factual findings of bad faith must be characterized by a high degree of specificity."); *Wolters Kluwer*, 564 F.3d at 114 ("[A]bsent . . . *specific evidence* of . . . bad faith, a sanction under the court's inherent power is unjustified." (emphasis added)); *Rossbach*, 81 F.4th at 141–44. Indeed, while Plaintiff's reply cites to various cases for the general rules regarding sanctions and disqualification, Plaintiff cites to no caselaw in which a court found meritlessness or bad faith based upon arguments or circumstances arguably analogous to those at issue. For example, Plaintiff cites to *Ransmeier v. Mariani*, but in that case,

the Second Circuit found bad faith because the attorney "engaged in a pattern of vexatious and duplicative filings, target[ed] opponents and judges with rude language, . . . assert[ed] spurious legal positions[, and submitted] . . . grossly insulting arguments to th[e] Court" including a motion that "reflect[ed] anti-Semitism in a raw and ugly form." Pl.'s Reply, at 1; 718 F.3d 64, 69–71 (2d Cir. 2013). Nothing even close to such conduct has occurred in this case.

Moreover, the Court has found no caselaw in which a court has found bad faith in arguably similar circumstances. To the contrary, the most comparable case the Court could find—which pertains to a request for sanctions for fees incurred opposing a motion to disqualify argued under the advocate-witness rule—held that the motion was neither meritless nor made in bad faith, for reasons much the same as those presented here. *See Aquino*, 708 F. Supp. 3d at 512.

In sum, the Second Circuit upholds sanctions for bad faith only "when serious misconduct clearly appears on the record." *Sakon*, 119 F.3d at 114–15. Nothing in the record suggests any such misconduct here. Thus, Plaintiff's request for sanctions must be denied.

## CONCLUSION

For the reasons set forth above, Plaintiff's motion for attorneys' fees is DENIED.

**SO ORDERED.**

 /s/ Steven Tiscione
Steven Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Central Islip, New York
   September 30, 2024